Chief Justice Robertson
delivered the Opinion of the Court.
This appeal is prosecuted for reversing a judgment for a slave named Philip, obtained by the appellees, (Bevverly Terrel, Napoleon Terrel, and Jerome Terrel,) claiming as residuary devisees of William Terrel, against the appellant, holding under the testator’s' widow, who claimed the ‘same slave as a devisee (of the same will,) for life.
On the trial, the circuit court instructed the jury that, if the testator owned Philip at the date of the will, he passed to the defendants (now appellees,) by the residuary devise to them, and that the widow derived no right to him from the will.
The only question deemed worthy of serious consideration, is, whether that instruction was right or wrong.
Clauses of the will on which the question to be decided arises.
Parol 'evidence.
Parol evidence is admissible to show that there is a latent ambiguity in a will, upon the face of which there is nothing apparently ambiguous — to explain the ambiguity.by parol'proof, that the testator j,ad but fyteett slaves, and only 1 named “Phillis” — hut had one, not named in the will, called Philip. The whole will together indicatA testator devises to his wife, for life, certain slaves, described in the wilt by their fifteen names — two of the 15 by the name of “Phillis.” Itappears, jng that.thetesthat his wife should have all Ins slaves antingherlife,it is *ag inserted in the ed, and so held thatPhilip passed,under the devisero the widdow. But—
*48 So much of the will as may be material in this enqui - ry is in the following words : — “After the payment of my debts and funeral expenses, I give to my wife — during her life — the following property” — enumerating several articles of his estate, and then proceeding thus— “the following negroes, to wit, Essex, Harry, Dick, Phillis, Sam, Hannah, Cely, Lucy, Phillis, Louisa, Ann,. Fanny and Mary Jane; and, after the death of 'my wife, 1 give to my son, William Terrel, the land whereon I live, and one negro, to be chosen by himself out of all that I have.” “I give to my three sons, Beverly, Napoleon and Jerome, after the death of my wife, all of the property Í have given to her, as above, except the negro which I have given to my son William, as above mentioned, to be equally divided between them.” “I desire that, during the life time of my wife, she, from the products of the farm, negroes, stock &c. do educate and support my three sons, Beverly, Napoleon and Je* rome, or until they arrive at the age of twenty one years. I desire that all the ¿alance of my estate, both real and personal, of what value or kind soever that may be, not herein before particularized, may be equally divided between my three sons, Beverly, Napoleon and Jerome all of which I give to them and their heirs forever.”
On the trial, it was shewn by parol evidence, that, at the date of the will, with the exception of a few slaves in the possession of his. married children, and to whom he devised them, the testator owned precisely the number of slaves devised to his wife for life, all corresponding in name with those described in that devise, except in one particular only, and that is, that he owned only one slave named Phillis, but owned Philip, who is not expressly mentioned in the" will, unless one of'the names “ Phillis” was intended for “ Philip.”
Upon these facts, the counsel for the appellant insists that, a latent ambiguity has been established, and explained sufficiently to prove satisfactorily that, instead of two slaves named “ Phillis,” the testator intended to devise, and did devise, to his wife, one slave named “ Phillis” and another slave named “ Philip;” and that, *49 as lie owned only one “ Philip,” (the slave now in controversy,) the appellees are not entitled to him during their mother’s life, nor even after her death, which has not yet occurred, until William Terrel shall have chosen the slave devised to him.
A devise not found in a will, cannot he established, or supplied, by parol proof, tliongh it may appear ever so clearly, that it was the intention of the testator to have had such a clause inserted. Webb’s Heirs vs. Webb, 7 Monroe, 626.
On the other hand, the counsel for the appellees objects to the competency of the parol evidence, and relies confidently on the case of Webb’s Heirs &c. vs. Webb, 7 Monroe, 626, as an apposite and conclusive authority.
There is no apparent ambiguity in the devise to the widow. If there be any ambiguitj' in that devise, it must, therefore, be of that class denominated “ latent,” which, depending, as it necessarily does, on facts extra- ,, ... , ,. . . „ neons to the will, and generally m pais, must, ot course, be established by extraneous proof, and may be satisfactorily exhibited and explained by parol testimony. This doctrine is too firmly settled to be now shaken or seriously doubted. 3 Starkie on Evidence, 1024-5-6; Ibid, 1694; and 1 Roper on Legacies, 132, 141, 271.
In the case of Webb’s Heirs &c. vs. Webb (supra,) there was no latent ambiguity ; but the question was — whether a total omission to make-a devise could be supplied by parol evidence. I hat case, therefore, has no application to the facts of this case. An intention to make a will, even though expressed, and however expressed, cannot be a will, unless there be a fraudulent suppression, or unless the law prescribing the mode of making valid wills shall have been complied with. The question in this case is not whether the testator intended to devise to his wife that concerning which his written will is silent, but it is, what is the true import, application or effect of a clause contained in his will ? Upon this question there could have been no doubt, had no extrinsic fact been proved. On its face, the will is clear, explicit, and unambiguous. But when it was proved that the testator owned only one slave named “ Phillis,” the manifest consequence was a latent ambiguity as to what slave the testator intended' by the reiterated name uPhillisand to explain or settle that ambiguity, parol testimony was undoubtedly competent. But such testi *50 mony, in such a case, should be clear and satisfactory* Is it so here ? This is the only question.
If it had been proved that the testator owned only one slave, and that his name was Philip, and if he had devised to his wife a slave named Phillis, and Philip had not been mentioned in the will, then, though the devise to the wife would have been unambiguous on its face, nevertheless the proof of the extraneous fact, that he owned no slave named Phillis would have created a latent ambiguity as to the slave intended by the testator ; and the proof of the fact that he owned only one.slave, and that the name of that slave was Philip, would, unquestionably, have been sufficient, according to both reason' and authority, to shew satisfactorily that, by “Phillis,” the testator intended “Philip.” '
A latent ambiguity may arise as to the identity of either the legacy or the legatee — the thing devised or the devisee ; and if, as has been settled by authority, 2 Pr. Wms. 140, parol testimony be sufficient to shew that a devise to “ Catharine Earnley” was intended for “ Gertrude Yeardley,” surely the hypothetical facts just stated would be sufficient to prove that Philip was intended to be devised by the name “Phillis,” substituted through inadvertence or mistake.
The only difference between the supposititious and the actual case, or between the cáse supposed and this case, is, that, in the former, the testator had but one slave and devised but one, and, in this case, he had several and devised several, and, therefore, possibly he intended not to devise to his wife as many, by one, as are enumerated by name in the devise to her, and the person who drew the will may have inadvertently and erroneously written “Phillis” twice, and .thus inserted fifteen instead of fourteen names. This may be possible, but it is not probable ; and if we can ascertain with satisfactory certainty that there is no mistake in the number, the legal consequence must be, that the mistake was in writing “ Phillis” once, instead of “Philip,” and therefore that “ Philip” passed by the devise to the wife, and not by the residuary devise to the appellees.
t^din^to'elucálate the intento^nd^expkhi the ambiguity ¡nthewilh
That the mistake was in the name, and not in the mmber, is, we think, satisfactorily evinced by the following among other less important considerations. First. It is more probable that the testator, when he read the will, or when it was read to him', confounded “ Phillis-" with s‘ Philip," than that he failed to observe that the clause contained one more slave than he intended to devise, and that “ Phillis" was written twice. Second. It is remarkable that, if the testator intended to devise to his wife a part only of the slaves in his possession, the clause, written and adopted for that purpose, should contain precisely as many names as the whole number of the slaves then in his possession. Third. It is unreasonable to suppose that, if the testator had devised Philip to the appellees, he would have given to his son William the option to choose, after his mother's death, one slave out of all his (ihe testator's) slaves. But it is reasonable and altogether consistent to presume, that the testator supposed that he had devised all the slaves to his wife during her life, and, therefore, in the devise of a slave to William, said that he might, “ after his mother's death," make choice out of all the slaves. Fourth. It seems that the testator intended that the appellees, who were all then minors, should live with their mother, and be reared by her to maturity, and that as much of the profits of the estate devised to her as might be necessary for that purpose should be appropriated to their education and maintenance. Is it probable, then, that he intended that she should have the use of only fourteen of his fifteen slaves, and that Philip only, a small boy, should be exempted, and should go immediately, and jointly, to the three infant children, who were to live with their mother and be sustained by her and at her expense, and who, at her death, were to have all the slaves except one, and much of the other estate devised to her during her life ?
The more rational and consistent deduction from the extraneous facts, and from the will, when properly considered, compared altogether and made to harmonize, is, that Philip was included in the devise to the widow. It seems to us, that any other deduction would he arbi *52 trary and incongruous, and could not be sustained by principle or by analogy.
Upon such a question as that we are now considering, it is unusual and would be unprofitable and inappropriate in a judicial opinion, to enter into a minute and elaborate analysis of all the facts, arguments and authorities that would directly or remotely tend to establish the proper legal conclusion, or to elucidate or fortify the opinion of the court. The general view presented in the foregoing outline, is deemed sufficient to shew, with a certainty as satisfactory as either reason, authority, or policy requires, that Philip, the slave now in controversy, passed by the will of William Terrel, senior, to his surviving wife, during her life. Consequently, the instruction given to the jury, by the circuit judge, must be deemed erroneous.
Wherefore, the judgment of the circuit court must be reversed, the verdict set aside, and the cause remanded for a new trial.